UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| **GENERAL MOTORS CORPORATION,** a Delaware corporation, *Plaintiff,* v. **PHAT CAT CARTS, INC.,** a Florida corporation, *Defendant.* | **PLAINTIFF GM'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** No. 8:06-CV-900-SCB-MSS Honorable Susan C. Bucklew United States District Judge |

Defendant Phat Cat Carts, Inc. ("Phat Cat") fails to raise any factual, legal, or equitable basis for denying GM's motion for preliminary injunction against Phat Cat's knockoffs of the world-famous, distinctive trade dress of HUMMER® and CHEVROLET® vehicles (hereinafter "GM's trade dress") and the world-famous trademarks HUMMER®, CHEVROLET®, CHEVY®, BEL AIR®, and MONTE CARLO® (hereinafter "GM's marks"). GM is highly likely to succeed on the merits, and the balance of hardships tips decidedly in GM's favor. Nothing in Phat Cat's opposition remotely calls this into question. Indeed, Phat Cat implicitly concedes the key factual premises of GM's motion (by failing to contest any of the relevant facts). Moreover, the arguments Phat Cat does raise—asserting that no one would confuse a golf cart for a full-scale automobile, and noting the "David and Goliath" discrepancy between the parties—are legally

Seipp, Flick & Kissane

irrelevant and completely unavailing.

### PHAT CAT FAILS TO REFUTE—AND THUS IMPLICITLY CONCEDES—THE CONTROLLING FACTS.

The key facts set forth in GM's Memorandum in Support of its Motion for Preliminary Injunction should be deemed conceded because Phat Cat failed to contest them. Among other things, Phat Cat concedes the following:

- that the valid, unrevoked, subsisting, and incontestable registration of the trademarks and trade dress of the HUMMER® and the CHEVROLET® models constitute prima facie evidence of GM's exclusive ownership of the marks;

- that the GM marks have considerable goodwill associated with them and are known and recognized throughout the world as symbols of unique and high quality vehicles and services;

- that GM and its authorized dealers and licensees are the only parties authorized to use the HUMMER® or CHEVROLET® marks in connection with the sale, distribution, or advertising of any products and services;

- that the marks are immediately identifiable and associated by the general public with GM and thus have acquired secondary meaning that GM has continuously used the marks;

- that Phat Cat's license with GM expired and was terminated in 2002, yet Phat Cat continues to falsely and misleadingly advertise that it has an agreement with GM; and

- that Phat Cat continues to hold itself out as a GM licensee, indicating its intent to capitalize and profit from GM's substantial goodwill.

For reasons set forth in detail in GM's opening memorandum, these facts are easily sufficient to sustain GM's motion. Phat Cat blatantly counterfeits GM's trade dress and trademarks, and its sale of products that compete with GM's authorized licensees amounts to clear trademark infringement and dilution.

## II. PHAT CAT FAILS IN ITS ATTEMPTS TO DEFEAT GM'S MOTION

Phat Cat makes a series of misplaced attempts to refute GM's showing of a likelihood of success on the elements of its infringement and dilution claims. Its arguments fail for the reasons explained below.

### A. The HUMMER® Trade Dress is Irrefutably Non-Functional and Distinctive

GM has marshaled extensive evidence to establish the non-functionality and distinctiveness of the HUMMER® trade dress. Phat Cat inexplicably denies that GM's HUMMER® trade dress is non-functional and distinctive, but does not support this with any evidence or even argumentation. Phat Cat's vague assertions and conclusions are clearly insufficient to refute GM's extensive showing on this issue.

### B. Likelihood of Confusion is Strong

Phat Cat likewise fails in its assertion that "[n]o reasonably prudent consumer would mistake a golf cart for a road worthy automobile." Phat Cat's Response at 3. This argument ignores an important—and well-settled—branch of trademark law. The question is not whether consumers would be confused as to whether Phat Cat's golf carts are genuine GM vehicles, but whether confusion is likely as to GM's sponsorship of or affiliation with the replica golf carts. *See* 15 U.S.C.A. § 1125(a)(1)(A) (defining the likelihood of confusion to include mistake or deception "as to the origin, sponsorship, or approval"); *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1201 (11th Cir. 2001) (declaring that "a trademark owner has protection against use of its mark on any product or service which would reasonably be thought by the buying public to come from the same

source, or thought to be affiliated with, connected with, or sponsored by, the trademark owner"). Furthermore, confusion as to source or sponsorship is not limited to point-of-sale purchasers: "The Lanham Act . . . was intended to do more than protect consumers at the point of sale," and "[t]he fact that an immediate buyer . . . does not entertain any notions that it is the real thing has no place in this analysis. Once a product is injected into commerce, there is no bar to confusion, mistake, or deception occurring at some future point in time.'" *Ferrari S.P.A. Esercizio v. Roberts*, 944 F.2d 1235, 1244 (6th Cir. 1991). (quoting *Rolex Watch, U.S.A., Inc. v. Canner*, 645 F.Supp. 484, 492-93 (S.D.Fla.1986)).

Thus, Phat Cat ignores the key question of whether a reasonably prudent consumer would likely think that Phat Cat's golf carts are sponsored or licensed by GM. The likelihood of such confusion could hardly be clearer, given that Phat Cat's golf carts are blatant replicas of their full-scale GM counterparts, and given that they incorporate counterfeits of GM's trademarks.

The likelihood of confusion becomes a virtual certainty when one recalls that Phat Cat is a terminated licensee who continues its use of the GM marks even after termination. Under the settled case law cited by GM and ignored by Phat Cat, such use of a trademark by a holdover licensee sustains a presumption of confusion.

The courts consistently have found confusion as to sponsorship or affiliation between miniature and full-size versions of automobiles. For example, various courts have also held that matchbox cars that copy their full-scale counterparts are an infringement of trademark and trade dress. *Warner Bros.,*

*Inc. v. Gay Toys, Inc.*, 724 F.2d 327 (2d Cir. 1983); *Processed Plastic Co. v. Warner Communications, Inc.*, 675 F.2d 852 (7th Cir. 1982). The fact that no one will confuse the golf cart or the matchbox with the full-size automobile is beside the point; the likelihood of confusion as to sponsorship or affiliation is obvious. A decision to the contrary would allow piracy of vehicle trade dress as long as the reproduction is not the exact same size or dimensions of the original.

### C. GM Will Suffer Irreparable Harm if the Preliminary Injunction is Not Granted

Phat Cat's challenge to GM's showing of irreparable harm fails as a matter of law under settled precedent. The Eleventh Circuit recently held that "[g]rounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill." *Ferrellgas Partners, L.P. v. Barrow*, 143 Fed.Appx. 180, 190 (11th Cir. 2005) (citing *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir. 1998). The court further held that "[t]he most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods. Even if the infringer's products are of high quality, the plaintiff can properly insist that its reputation should not be imperiled by the acts of another." *Ferrellgas Partners*, 143 F.3d at 190-191 (citing *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir.1988). Finally, "[a] plaintiff need not show that the infringer acted in such a way as to damage the reputation of the plaintiff. It is the loss of control of one's reputation by the adoption of a confusingly similar mark that supplies the substantial threat of irreparable harm… [A] sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may *by*

*itself* constitute a showing of . . . [a] substantial threat of irreparable harm." *Ferrellgas Partners*, 143 F.3d at 191 (citations omitted and emphasis added).

### D. Phat Cat's "David v. Goliath" Argument Fails.

Phat Cat's assertion that GM's strength and Phat Cat's small size somehow undermine GM's showing of irreparable injury fails as a matter of law. GM need only establish a strong showing of likelihood of confusion to demonstrate substantial threat of irreparable harm. GM has done that, and in so doing it has easily carried its burden of proof.

Phat Cat seeks sympathy from the Court by comparing GM's "publicly traded world wide enterprise" with "Phat Cat's small, local business grossing less that $500,000.00," Phat Cat Responsoe at 2, but that comparison is irrelevant as a matter of law. Under longstanding precedent, the relative size of the two companies is completely irrelevant. As Judge Posner has eloquently explained in a case where the Seventh Circuit reversed a lower court that had been sympathetic to a "David and Goliath" argument involving the "giant corporation" GE against a "modest business" in Chicago:

> Small local businessmen of good repute do not have a license to steal trademarks from large nonresident corporations, and the amount of harm that the infringer inflicts goes to the amount of damages rather than to his liability for damages; ***the trademark laws do not excuse modest infringements by petty pirates.***

*General Electric v. Speicher*, 877 F.2d 531, 533, 537 (7th Cir. 1989) (emphasis added); *see also Esquire, Inc. v. Maira*, 101 F.Supp. 398, 402 (D.C. Pa. 1951) (stating that allowing the defendant to infringe the plaintiff's trademark "merely because it is humble in its field of operations would set a precedent which would

threaten to nibble away or dilute the value of the goodwill which Plaintiff has established . . ."); *Stork Restaurant v. Sahati*, 166 F.2d 348, 357 (9th Cir. 1948) (declaring that "[h]umility is no doubt a virtue in many instances, but in a case of this type it affords no defense to a suit for an injunction against infringement of a trade name.").

## CONCLUSION

For the foregoing reasons, this Court should grant a preliminary injunction enjoining Phat Cat from manufacturing, advertising, and selling golf car body kits and custom golf cars that misappropriate the world-famous, distinctive trademarks and trade dress of HUMMER® and CHEVROLET® vehicles.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 3d day of August, 2006, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to **Catherine E. Timilty, Esq.**, The Robbins Law Firm, P.A., 2639 Dr. MLK Jr. St. North, St. Petersburg, FL 33704.

SEIPP, FLICK & KISSANE, P.A.
Attorneys for Plaintiff
General Motors Corporation

/s/ Armando P. Rubio
Florida Bar No. 478539
Two Alhambra Plaza – Suite 800
Coral Gables, FL 33134-5214
(305) 995-5600 (telephone)
(305) 995-6090 (facsimile)

and

Case No. 8:06-CV-900-SCB-MSS

**HOWARD PHILLIPS & ANDERSEN**
560 East 200 South, Suite 300
Salt Lake City, Utah 8410-2801
Telephone: 366-770-7801