**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**GENERAL MOTORS CORPORATION,**
**a Delaware corporation,**

      **Plaintiff,**

**v.**                                        **Case No.  8:06-cv-900-SCB-MSS**

**PHAT CAT CARTS, INC., f/k/a THE**
**LITTLE CAR COMPANY, INC.,**
**a Florida corporation,**

      **Defendant.**

_____

## REPORT AND RECOMMENDATION

      **THIS CAUSE** comes before the Court in consideration of Plaintiff General Motor

Corporation's Motion for Preliminary Injunction (the "Motion"), filed on May 12, 2006.[1]  (Dkt.

2) In its Motion, General Motors (the "Plaintiff") requests that the Court issue a preliminary

injunction against Defendant, Phat Cat Carts, Inc. (the "Defendant").  Plaintiff filed this

trademark infringement action alleging that Defendant has infringed upon its Hummer and

Chevrolet trademarks and trade dress.  (Dkt. 1) Plaintiff is the manufacturer of motor

vehicles and has been in the business of selling motor vehicles, parts, and accessories for

many years.  (Dkt. 3) Defendant, a former licensee of Plaintiff, who sells golf carts

designed to look like certain cars sold by Plaintiff, opposes the Motion. (Dkt. 21)

Defendant's primary contention is that Plaintiff allegedly breached a licensing agreement

_____

[1] This matter was referred on July 28, 2006, to the Undersigned by the District
Court Judge assigned to this case for a Report and Recommendation.

1

by failing to pursue other infringers, whom Defendant contends, sold similar golf carts without consent of Plaintiff.  As such, Defendant contends that it has the right to refuse to pay the licensing fees, and that it can continue to use the license.  (Dkt. 21) Defendant suggests additionally that the failure of Plaintiff to pursue the other alleged infringers has rendered Plaintiff's trade marks and trade dress a nullity.

Having considered the respective positions of the parties and having considered the evidence submitted in support of and in opposition to the Motion, the Undersigned **REPORTS AND RECOMMENDS** that Plaintiff's Motion be **GRANTED** and a preliminary injunction be **ISSUED** against Defendant.

PROCEDURAL HISTORY

Plaintiff General Motors filed a lawsuit asserting the following claims against Defendant: Trademark and Trade Dress Dilution under 15 U.S.C.§ 1125(c);  Federal Trademark Infringement and Counterfeiting under 15 U.S.C. § 1114; False Designation of Origin or Sponsorship, False Advertising, and Trade Dress Infringement under 15 U.S.C. § 1125(a); and Common Law Trademark Infringement.  (Dkt. 1)  Plaintiff filed a Motion for Preliminary Injunction on May 12, 2006.  (Dkt. 2)  The Court held an evidentiary hearing on the Motion on Monday, August 28, 2006.  Plaintiff submitted a verified complaint with an accompanying affidavit as evidence in the hearing.  (Dkt. 1)  Defendant relied solely on the testimony of Brian Wilson, owner and president of Phat Cat Carts, Inc., who testified live at the hearing.[2]

---

[2] Defendant filed an untimely notice of intent to introduce an expert opinion at the hearing which was opposed by Plaintiff.  At the hearing, Defendant announced that the expert would not be called.

FINDINGS OF FACT

1.     Plaintiff General Motors is a Delaware Corporation with its principle place of business in Detroit, Michigan.

2.     Defendant Phat Cat Carts, Inc., is a corporation organized under the laws of the State of Florida with its principle place of business in Clearwater, Florida.  Brian Wilson is the sole owner and president of the corporation.

3.     In 1924, Plaintiff first registered the trademark CHEVROLET®, and has since obtained numerous other registrations for the mark.  (Dkt. 1) Plaintiff has registered with the United States Patent and Trademark Office the following: CHEVY®; MONTE CARLO®; CHEVROLET POLYGON LOGO®; and the CHEVROLET CHEVRONS LOGO®.  (Dkt. 1) Plaintiff's CHEVROLET® trade marks and trade dress are collectively referred to as "Chevrolet Marks."

4.     Since 1981, Plaintiff has used the HUMMER® trademark, service mark, and trade dress.  In 1999, Plaintiff acquired all the rights to the trademark HUMMER®.  (Dkt. 3)  Plaintiff has obtained United States trademark registrations for the trademark HUMMER®, as well as the trade dress front design of the Hummer vehicle, the HUMMER GRILL® (Dkt. 1) Plaintiff's HUMMER trade marks and trade dress are collectively referred to as "Hummer Marks." (Dkt. 1)

5.     Plaintiff and its predecessors have extensively employed and caused to be advertised and publicized throughout the world, the Chevrolet and Hummer Marks to identify CHEVROLET® and HUMMER® vehicles, parts, products, and services.

6.     The distinctive design and shape of the CHEVROLET® and HUMMER® vehicles is immediately identifiable and associated by the general public with the Chevrolet

Marks and Hummer Marks and General Motors, and has thus acquired secondary meaning.  (Dkt. 1)

7.     Plaintiff and its predecessors have spent hundreds of millions of dollars and have expended significant effort in advertising and promoting authorized CHEVROLET® and HUMMER® products in developing the Chevrolet Marks and Hummer Marks throughout the world.  (Dkt. 1)

8.     Defendant is in the business of providing golf cart body kits.  (Dkt. 1) Defendant had obtained a license from Plaintiff for the use of the Chevrolet Marks and Hummer Marks in manufacturing, marketing, and advertising golf cart body kits, which are used to turn a golf cart into a "knockoff" of HUMMER® and CHEVROLET® vehicles. In the licensing agreement, Defendant agreed to pay Plaintiff six percent (6%) of its revenue in exchange for the use of Plaintiff's trademarks.  Defendant's license expired and was terminated at the latest in 2004, perhaps as early as in 2002.

9.     Plaintiff licenses the Hummer Marks and Chevrolet Marks to other companies, including competitors of Defendant.

10.    At the time of filing the Verified Complaint, Defendant continues to offer golf cart kits that use the precise Chevrolet Marks as well as the Hummer Marks.  (Dkt. 3) At the time of filing the Verified Complaint, Defendant holds itself out falsely as a licensee of Plaintiff, when it knows it is not.  Owner Brian Wilson admits that his company continues to hold itself out to the public as being licensed by Plaintiff.

11.    Defendant has intentionally infringed on the trade marks and trade dress of the Chevrolet and Hummer Marks.

4

STANDARD OF REVIEW

In this instance Plaintiff requests that the Court issue a preliminary injunction against Defendant.   Plaintiff seeks to halt Defendant's alleged trademark and trade dress infringement and dilution in offering golf cart kits that resemble HUMMER® and CHEVROLET® vehicles to the public.  The Court may issue a preliminary injunction if the moving party shows: a) a substantial likelihood of success on the merits; b) that the moving party will suffer irreparable injury if the injunction is not issued; c) that the threatened injury to the moving party outweighs the potential damage that the proposed injunction may cause the non-moving party; and d) that the injunction will not be adverse to the public interest.  See Oakley, Inc. v. Sunglass Hut Int'l, 316 F.3d 1331, 1338-39 (Fed. Cir. 2003); All Care Nursing Service, Inc. v. Bethesda Memorial Hospital, Inc., 887 F.2d 1535, 1537 (11th Cir. 1989).

A consideration of these factors by the Court "requir[es] a delicate balancing of the probabilities of ultimate success at final hearing with the consequences of immediate irreparable injury which could possibly flow from the denial of preliminary relief." Siegal v. LePore, 234 F. 3d 1163, 1178 (11th Cir. 2000).  The decision to grant or deny a preliminary injunction is within the sound discretion of the district court.  Palmer v. Braun, 287 F. 3d 1325, 1329 (11th Cir. 2002).   Thus, the Court must determine whether issuance of a preliminary injunction is appropriate in this matter.

LIKELIHOOD OF SUCCESS ON THE MERITS

**A.  Trademark Infringement**

Plaintiff asserts that it has shown a substantial likelihood of success on the merits for its trademark infringement claim against Defendant.  15 U.S.C. § 1114(1)(a) provides

5

that any person who shall, without the consent of the registrant, use in commerce any reproduction, counterfeit, copy or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, shall be liable in a civil action by the registrant.  Thus, in order to succeed on a trademark infringement claim in this case, Plaintiff must prove that 1) its mark was used in commerce by Defendant without its consent, and 2) the unauthorized use was likely to cause confusion or to cause mistake or to deceive.  15 U.S.C. § 1114(1)(a).

        First, Plaintiff has sufficiently shown that Defendant used its registered trademark in commerce without Plaintiff's consent.  It is clear that Plaintiff and Defendant had a licensing agreement whereby Defendant was entitled to use the Chevrolet Marks to manufacture, advertise and sell golf carts and golf cart body kits as long as it paid Plaintiff six percent (6%) of the revenue made by selling the golf carts and golf cart body kits. However, Defendant admitted that this licensing agreement expired and was terminated as early as in 2002, but in 2004 at the latest.  At the hearing Brian Wilson, Owner of Phat Cats Carts, Inc., freely admitted subsequently using both the Hummer and Chevrolet Marks to sell golf carts even though he knew that the licensing agreement had been terminated. Wilson also admitted that the company holds itself out to the public as being affiliated with General Motors even though it is no longer affiliated with the corporation.  Defendant admitted using Plaintiff's registered trademarks in commerce without Plaintiff's consent. As such, Plaintiff has sufficiently shown that Defendant used its trademarks in commerce without its consent.

        Second, Plaintiff must show that the unauthorized use of the Hummer and

6

Chevrolet marks by Defendant is likely to cause confusion among the public in order to succeed on the merits of its trademark infringement claim against Defendant.  Plaintiff contends that Defendant's continued use of the identical, registered Hummer Marks and Chevrolet Marks shows a likelihood of confusion among the public.  (Dkt. 3); See International Cosmetics, Inc. v. Gapardis Health and Beauty, Inc., 303 F. 3d 1242, 1249-50 (11th Cir. 2002) (ruling that concurrent use of the same trademark poses a substantial likelihood of confusion among consumers); Dive N Surf, Inc. V. Anselowitz, 834 F. Supp. 379, 382 (M.D. Fla. 1993) (ruling that where trademarks are substantially similar as to both design and use, the court presumes that the defendant's counterfeit items caused public confusion in the marketplace).  However, Defendant contends that no reasonable consumer would mistake a golf cart for an automobile; therefore, Plaintiff has failed to establish that there is a likelihood of confusion.

Defendant's argument that no confusion exists because no reasonable consumer would confuse a golf cart with an automobile is without merit.  The "likelihood of confusion test" does not require that a plaintiff prove that consumers would likely confuse the alleged infringer's product with the real product.  In order to meet the "likelihood of confusion test," it is sufficient for a plaintiff to show that the unauthorized use of the trademark has the effect of misleading the public to believe that the user is sponsored or approved by the plaintiff.  Id. at 1492.

In this instance Plaintiff has shown that it is likely that the public will be misled to believe that Defendant is sponsored or approved by Plaintiff.  Plaintiff has shown that a strong likelihood of confusion exists due to Defendant's continued use of Plaintiff's Hummer Marks and Chevrolet Marks after the termination of the license.  Here, the public

would easily assume an association between Plaintiff and Defendant because Defendant holds itself out as a licensee of Plaintiff; it uses the trademark of Plaintiff's products on its golf carts and it has not disclaimed its disassociation with Plaintiff. See Burger King Corp. V. Mason, 710 F.2d 1480 (11th Cir. 1983) (holding that continued use by one whose trademark license had been cancelled satisfies the likelihood of confusion test and constitutes trademark infringement).

Based on the evidence presented at the hearing and the evidence presented in Plaintiff's Verified Complaint, the Court finds that Plaintiff has made a sufficient showing that Defendant has used Plaintiff's Hummer Marks and Chevrolet Marks in commerce without Plaintiff's consent. Additionally, the Court finds that Defendant's unauthorized use of these trademarks is likely to cause confusion among the public. As such, the Undersigned concludes that Plaintiff has shown a substantial likelihood of success on the merits of its trademark infringement claim pursuant to 15 U.S.C. § 1114.

Plaintiff's showing of a substantial likelihood of success on the merits of its trademark infringement claim is sufficient to meet the first requisite for obtaining preliminary injunctive relief. See Schiavo ex rel. Schindler v. Schaivo, 357 F. Supp.2d 1378, 1384 (M.D. Fla. 2005) (holding that to obtain temporary injunctive relief, a plaintiff must show a substantial likelihood of success on at least one claim). Thus, it is unnecessary for the Court to analyze the likelihood of success of Plaintiff's other claims against Defendant. However, the Court analyzes the likelihood of success of Plaintiff's other claims against Defendant in the instant case since these issues were addressed by the parties at the evidentiary hearing.

**B.  Trade Dress Infringement**

Plaintiff also contends that it has shown a substantial likelihood of success on the merits for its trade dress infringement claim against Defendant.  The Eleventh Circuit has recognized that the design of a product itself may constitute protectable trade dress under § 43(a) of the Lanham Act, 15 U.S.C. § 1125.  John H. Harland Co. v. Clark Checks, Inc., 711 F.2d 966, 980 (11th Cir. 1983).  "The term 'trade dress' refers to the appearance of a product when that appearance is used to identify the producer."  Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC, 369 F.3d 1197, 1202 (11th Cir. 2004).  In order to prove a claim for trade dress infringement, a plaintiff must prove: 1) that the product design of the two products is confusingly similar; 2) that the features of the product design are primarily non-functional; and, 3) that the product design is inherently distinctive or has acquired secondary meaning.  Id.

In assessing the first element of the claim, the Eleventh Circuit stated, "[t]he factors relevant to determining whether there is a likelihood of confusion between the trade dress of two products are 'essentially the same' as those relevant to determining whether there is a likelihood of confusion between the parties' trademarks."  John H. Harland Co. v. Clarke Checks, Inc., 711 F.2d 966, 981 (11th Cir. 1983).  The Court held that a plaintiff who establishes a likelihood of confusion for a trademark infringement claim, also establishes the first element of a trade dress infringement claim.  Id.

Similarly, Plaintiff in this instance has already established in its trademark infringement claim that there is a likelihood of confusion between Defendant's golf cart kits and Plaintiff's Hummer and Chevrolet vehicles.  Consequently, Plaintiff has also made a sufficient showing that the two products have confusingly similar trade dress.  As such,

Plaintiff has shown that it is substantially likely to succeed on the first element of its trade dress infringement claim against Defendant.

Second, in a trade dress infringement action a plaintiff has the burden to prove that the product design features are primarily non-functional.  Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC, 369 F.3d at 1202.  A product feature is considered functional if it is essential to the use or purpose of the article or if it affects the cost or quality of the article. Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC, 369 F.3d at 1203.

Plaintiff has made a sufficient showing that the product design features are primarily non-functional.  First, in the Verified Complaint Plaintiff established that the Hummer Marks and the Chevrolet Marks are not essential to the use or purpose of its vehicles, but are merely aesthetic in nature.  (Dkt. 1, ¶¶ 8, 13, 14, 20) In fact, the overall appearance of Plaintiff's vehicles distinguish them from competitors' vehicles.  Id.  Furthermore, Plaintiff has shown that the same conclusion of non-functionality is appropriate in the context of knockoff golf carts and golf cart body kits as is evident from the numerous alternative custom golf cart designs available on the market.  (Dkt.1, ¶¶ 14, 20)  Plaintiff has offered evidence that similar product features have been designated as non-functional.  General Motors Corp. v. Let's Make a Deal, 223 F. Supp.2d 1183 (D. Nev. 2002) (finding the Hummer trade dress on the defendant's replica car kits non-functional).  Defendant did not present any evidence at the hearing that suggested the golf cart body features are functional.

Finally, a plaintiff must show that its trade dress is inherently distinctive or has acquired secondary meaning.  Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 769 (1992) Plaintiff has made this showing in the instant case.  As established in the Verified

Complaint, Plaintiff has extensively employed the HUMMER® and CHEVROLET® trade dress and caused it to be advertised throughout the world.  As such, the distinctive design and shape of its vehicles are immediately identifiable and associated by the general public with Plaintiff, and thus its trade dress has acquired secondary meaning .  (Dkt. 1, ¶¶ 15, 21) Furthermore, Plaintiff and its predecessors have spent hundreds of millions of dollars and have expended significant effort in advertising and promoting authorized CHEVROLET® and HUMMER® products in developing the Chevrolet Marks and Hummer Marks throughout the world.  (Dkt. 1)

Accordingly, the Court finds that Plaintiff has made a sufficient showing that it can prove all four elements of its trade dress infringement claim against Defendant.

### C.  Trademark Dilution

The Trademark Dilution Act provides in relevant part that "the owner of a famous mark shall be entitled. . . . to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark. . . ."  15 U.S.C. § 1125 (c)(1).  To establish a claim under 15 U.S.C. § 1125 (c)(1), a plaintiff must show: 1) that the mark is famous; 2) that the alleged infringer adopted the mark after the mark became famous; 3) the defendant's use is commercial; and, 4) that the infringer diluted the mark.  Savin Corp. v. Savin Group, 391 F.3d 439, 448-49 (2d Cir. 2004).

It is clear that Plaintiff has presented ample evidence in the Verified Complaint and at the evidentiary hearing which shows Plaintiff will be able to prove the first three elements of its trademark dilution claim against Defendant.  The only issue in dispute is whether Plaintiff has presented sufficient evidence to show that Defendant's use diluted Plaintiff's

11

marks.

In order to prove that a defendant has diluted a plaintiff's trademark, the plaintiff must show actual dilution.  Mosely v. Victoria's Secret Catalogue, Inc., 537 U.S. 418, 433 (2003).  In Mosely, affiliated corporations who owned the trademark "Victoria's Secret" brought a trademark dilution action against an adult novelty store named "Victor's Little Secret."  Id. at 418.  The Supreme Court ruled that the plaintiffs were obligated to prove actual dilution rather than likely dilution, pursuant to 15 U.S.C. § 1125.  Id. at 418.  The Court reasoned that "direct evidence of dilution such as consumer surveys will not be necessary if actual dilution can reliably be proved through circumstantial evidence- the obvious case is one where the junior and senior marks are identical."  Id. at 434.  The Court found that the corporations failed to present any evidence, direct or circumstantial, of actual dilution.  Thus, the Court held that the corporations failed to prove actual dilution pursuant to 15 U.S.C. § 1125.

Lower courts following the Mosely decision have determined that a plaintiff's showing that the defendant used identical trademarks constitutes circumstantial evidence sufficient to support a finding of actual dilution.  See Nike Inc. v. Variety Wholesalers, 274 F. Supp.2d 1352, 1372 (S.D. Ga. 2003); Pinehurst, Inc. v. Wick, 256 F. Supp.2d 424, 431-32 (M.D. N.C. 2003); Savin Corp. v. Savin Group, 391 F.3d 439, 452-53 (2nd Cir. 2004) (holding that where a plaintiff who owns a famous senior mark can show the commercial use of an identical junior mark, such a showing constitutes circumstantial evidence of the actual dilution element of a trademark dilution claim).

Here, Plaintiff has made a sufficient showing that Defendant used and continues to use Plaintiff's identical Hummer Marks and Chevrolet Marks.  Plaintiff submitted evidence

12

in the Verified Complaint (Dkt. 1) and at the hearing that proves that Defendant has used and continues using the precise Hummer Marks and Chevrolet Marks.  In fact, Brian Wilson admitted that his company continues using identical Hummer and Chevrolet Marks in order to market, advertise, and sell golf carts and golf cart body kits.  As such, the Court finds that Plaintiff's showing in this regard constitutes circumstantial evidence sufficient to prove actual dilution.

The Undersigned concludes that Plaintiff has shown a substantial likelihood of proving all four elements of trade dilution pursuant to 15 U.S.C. § 1125.  Thus, the Undersigned concludes that Plaintiff is substantially likely to succeed on the merits of its trademark dilution claim against Defendant.

IRREPARABLE HARM

In order to obtain the injunctive relief requested, Plaintiff must show that it will suffer irreparable harm or injury if the preliminary injunction is not issued.  Oakley, Inc. v. Sunglass Hut Int'l, 316 F.3d at 1338-39.  Plaintiff correctly asserts that irreparable injury is presumed in trademark infringement cases where Plaintiff has established a likelihood of success on the merits.  (Dkt. 3)

It is usually recognized in trademark infringement cases that there is not an adequate remedy at law to redress infringement and infringement by its nature causes irreparable harm.  Tally-Ho, Inc. v. Coast Community College, 889 F.2d 1018, 1029 (11th Cir. 1989).  Moreover, a presumption may arise in a case of trademark infringement where, as here, the court has held that the plaintiff has established a likelihood of success on the merits.  See E. Remy Martin & Co., S.A. v. Shaw-Ross International Imports, Inc., 756 F.2d 1525, 1530 (11th Cir. 1985).

Even if irreparable injury were not presumed in this case, Plaintiff has shown that it will suffer irreparable injury if an injunction is not issued in this case.  Plaintiff presented evidence that it has lost the ability to control the nature and quality of the services provided under Defendant's infringing mark.   Additionally, Plaintiff has shown that absent a preliminary injunction there is no other adequate remedy to halt Defendant's admitted, continued use of Plaintiff's Hummer Marks and Chevrolet Marks.  Finally, Brian Wilson implied that his company would continue using Plaintiff's registered trademarks until notified otherwise by the Court.  Thus, Plaintiff has shown that it will suffer irreparable injury if the Court does not issue a preliminary injunction against Defendant.

BALANCE OF HARDSHIPS

The third element that Plaintiff must show in order to obtain a preliminary injunction is that the threatened injury to Plaintiff outweighs the potential damage that the proposed injunction may cause to Defendant.

Specifically, the Court finds that the balance of hardships tips in favor of Plaintiff.  Without a preliminary injunction Plaintiff would lose control of its trademarks because Defendant would freely continue to use Plaintiff's registered marks.  This would result in a loss of money and goodwill for Plaintiff that could not easily be calculated or redressed.  Moreover, Defendant's losses, if any, from the injunction would be a loss of revenues that is easily calculable.

Defendant's "David and Goliath" argument on this point is unpersuasive.  Defendant cannot be heard and complain that it would be harmed when it brought this injury upon itself.  Defendant had a license to use Plaintiff's Chevrolet Marks, which was terminated.  Defendant stopped paying royalties and continued to use Plaintiff's trademarks without

14

approval.  See S & R Corp. v. Jiffy Lube International, Inc., 968 F.2d 371, 379 (3rd Cir.

1992) (stating that the defendant who stopped paying royalties to the plaintiff inflicted the

harm upon itself).   Brian Wilson testified that he felt he should be able to use the

trademarks without paying royalties because General Motors failed to protect his business

from other infringing golf cart companies.  When asked, however, Mr. Wilson could not

remember a specific provision in the licensing agreement that obligated Plaintiff to protect

his business from competitors.  Finally, Mr. Wilson admitted that the infringement was

intentional.  Therefore, the Court finds that the harm caused by Defendant's continual use

of Plaintiff's trademarks outweighs any harm caused to Defendant by issuing a preliminary

injunction.

PUBLIC INTEREST

       Finally, the Plaintiff must show that the issuance of a preliminary injunction will not

be adverse to the public interest.  Plaintiff argues correctly that the public is interested in

fair competitive practices and in the protection of trademarks and trade names.  (Dkt. 3)

Issuing a preliminary injunction in the case would further that public interest.

CONCLUSION

       After reviewing the evidence presented by Plaintiff in the Verified Complaint (Dkt.

1) and by both parties at the evidentiary hearing, the Undersigned finds that Plaintiff has

met its burden of proving that preliminary injunctive relief is appropriate in this case.  First,

Plaintiff has made a sufficient showing that it is substantially likely to succeed on the merits

of its trademark infringement, trade dress and trademark dilution claims against Defendant.

Second, Plaintiff has made a sufficient showing that it will be irreparably harmed absent

the issuance of a preliminary injunction.  Third, Plaintiff has made a sufficient showing that

the balance of hardships weighs in favor of Plaintiff.  Finally, the Plaintiff has made a sufficient showing that the public interest will be served by the Court's issuance of a preliminary injunction in this case.

Accordingly, the Undersigned **REPORTS AND RECOMMENDS** that Plaintiff's Motion should be **GRANTED** and a preliminary injunction should be **ISSUED**.  Defendant should be **DIRECTED** that it cannot use in any manner the trademarks, logos or trade dress, which are identical or closely resemble those listed in Plaintiff's Verified Complaint.

**RESPECTFULLY RECOMMENDED** in Tampa, Florida on this 28th day of September 2006.

MARY S. SCRIVEN
United States Magistrate Judge

Copies to:

Counsel of Record

Judge Susan C. Bucklew

## NOTICE TO THE PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.  See 28 U.S.C. § 636(b)(1).

16